UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
CINDY CHEN, on behalf of herself and all
others similarly situated,

                           Plaintiffs,                      **OPINION AND ORDER**

    -against-                               16-cv-4790 (VF)

SHANGHAI CAFÉ DELUXE, INC.
d/b/a Shanghai Café; Eile Wan, Ping Lin,
and Xinsheng Gu,

                           Defendants.
-----------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Plaintiff Cindy Chen brought this action on behalf of herself and others similarly situated

against Defendants Shanghai Café Deluxe, Inc. ("Shanghai Café"), Eile Wan, Ping Lin, and

Xinsheng Gu[1] (collectively, "Defendants") to recover unpaid wages, overtime wages, and other

damages arising from Defendants' violations of the Fair Labor Standards Act ("FLSA"), the

New York Labor Law ("NYLL"), and New York state labor regulations.[2] For the reasons that

---

[1] In the First Amended Complaint, Defendant Xinsheng Gu's name was spelled "John" Gu. See, e.g., First Am. Compl., ECF No. 9, ¶ 28. The spelling of the name was changed to "Xinsheng" in the Second Amended Complaint.

[2] In the initial complaint, Chen was the only named plaintiff. See ECF No. 1. On May 30, 2018, Chen moved for leave to file a Second Amended Complaint, naming Hog Zeng Gou as an additional named plaintiff. See ECF No. 61. The Court granted the motion and, on July 10, 2018, Chen filed a Second Amended Complaint adding Gou as a named plaintiff and asserting various claims under the NYLL on his behalf. See ECF No. 68. On February 28, 2020, the Court terminated Gou as a plaintiff and dismissed his claims. See 2/28/20 Order, ECF No. 100, at 4, 6. The only remaining named plaintiff is Chen.

follow, Chen is granted default judgment against Defendants and awarded damages and attorneys' fees as outlined herein.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff Cindy Chen was employed by Shanghai Cafe as a waitress from April 15, 2012, to January 26, 2016. See Second Amended Compl. ("SAC"), ECF No. 68, ¶¶ 10, 33. Defendant Shanghai Cafe is a New York State corporation, located at 100 Mott Street in New York, New York. See SAC ¶ 12. Shanghai Cafe is a "business engaged in interstate commerce" with gross sales exceeding $500,000 per year. See id. at ¶¶ 13-14. Throughout the relevant period, the owners and operators of Shanghai Café—individual defendants Eile Wan, Ping Lin, and Xinsheng Gu—had the power to hire and fire Plaintiff, controlled her terms and conditions of employment, and determined her rate and method of compensation. See id. at ¶¶ 15-30.

Throughout her employment, Chen worked 57 hours per week. Id. at ¶¶ 34-35. She worked 11 hours a day, from 11 a.m. to 10 p.m., each Monday, Tuesday, and Sunday. Id. at ¶ 34. She worked 12 hours a day, from 11 a.m. to 11 p.m., each Friday and Saturday. Id. For her work, Chen was paid a flat rate of $125 per week. Id. ¶¶ 36, 38-39. During her employment, she did not receive a meal break. Id. ¶¶ 41-42. Chen was never told that Defendants would be making "tip deductions toward the minimum wage." SAC ¶¶ 43-44. Chen was paid her wages in a combination of cash and check. SAC ¶¶ 38-40. Shanghai Café never provided Chen with written notice of her rate of pay. See SAC ¶¶ 43, 122-23.

Chen now seeks unpaid minimum wages under the FLSA and NYLL (SAC ¶¶ 76-84), unpaid overtime wages under the FLSA and NYLL (SAC ¶¶ 85-97), spread-of-hours pay under

---

[3] The facts recounted here are established by the allegations in the complaint, which are deemed admitted except as to damages, because of Defendants' default. See Finkel v. Romanowicz, 577 F.3d 79, 83-84 (2d Cir. 2009).

the NYLL (SAC ¶¶ 98-100), compensation for unlawfully retained tips under the FLSA and NYLL (SAC ¶¶ 101-109), liquidated damages, statutory damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs. Chen also seeks damages for violations of General Business Law § 349 (SAC ¶¶ 132-35) and for violations of 26 U.S.C. § 7434, based on Defendants' fraudulent filings with the Internal Revenue Service (SAC ¶¶ 129-31).

Chen filed her complaint on June 22, 2016. See ECF No. 1. On July 7, 2016, Chen filed a First Amended Complaint. ECF No. 9. Defendant Shanghai Café was served on July 14, 2016. See ECF No. 15. Individual defendants Wan, Lin and Gu were also all served on July 14, 2016. See ECF Nos. 16-18. On August 9, 2016, Defendants filed an answer. See ECF No. 22. On January 5, 2018, the parties consented to my jurisdiction for all proceedings. See ECF No. 55. On May 30, 2018, Chen moved for permission to file an amended complaint. ECF No. 61. Leave was granted and Chen filed a Second Amended Complaint on July 10, 2018. ECF No. 68. Defendants answered the amended complaint.[4] See ECF No. 66.

The parties engaged in discovery, see, e.g., ECF No. 73, and trial was scheduled to commence on February 25, 2020, see ECF No. 79. On January 29, 2020, counsel for Defendants, Michael K. Chong, moved to withdraw as counsel for all Defendants. See ECF No. 88. On March 18, 2020, the Court granted Chong's motion to withdraw as counsel, and gave Defendants 30 days to obtain new counsel. See ECF No. 105, Minute Entry dated Mar. 18, 2020. By July 20, 2020, Defendants had not yet retained new counsel, and the Court instructed Plaintiff that it

---

[4] Following her May 30, 2018 motion for leave to file an amended complaint, Plaintiff attempted to file the amended complaint on June 25, 2018, but the electronic filing was rejected for a filing deficiency. See ECF No. 64; Minute Entry dated June 26, 2018. Defendant answered the Second Amended Complaint on July 6, 2018, see ECF No. 66, before Plaintiff could correct the filing error on July 10, 2018, see ECF No. 68.

3

could move for the entry of default judgment by September 4, 2020. See ECF Nos. 123-24. Defendants were served with a copy of the Court's order on July 24, 2020. See ECF No. 125.

The Clerk of Court issued a Certificate of Default for Shanghai Café and all three individual defendants on September 18, 2020. See Cert. of Default, ECF Nos. 135-138. On September 18, 2020, Plaintiff filed a motion for default judgment. See ECF Nos. 139-46. On July 7, 2021, the Court denied without prejudice Plaintiff's motion for default judgment. See ECF No. 151, Minute Entry dated July 7, 2021. On December 21, 2022, Plaintiff filed proposed findings of fact and conclusions of law, in support of the entry of default judgment and for an award of damages, and also filed a motion for attorneys' fees. See ECF Nos. 159-163. Defendants were served with these filings on December 22, 2022. See ECF No. 164. To date, Defendants have not filed any opposition to the motion for default judgment, motion for attorneys' fees, or Plaintiff's damages submissions. Defendants have also not appeared in the case since the entry of the Clerk's Certificate of Default in September 2020.

## DISCUSSION

In light of Defendants' default, the Court accepts as true the well-pleaded allegations in the Second Amended Complaint, with the exception of those allegations relating to damages. See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citations, alterations, and quotation marks omitted). As to damages, a district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). This inquiry requires the district court to: (1) "determin[e] the proper rule for

4

calculating damages on . . . a claim" and (2) "assess[ ] plaintiff's evidence supporting the damages to be determined under this rule." Id.

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the damages amount. Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (internal quotation marks and citation omitted); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found, Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). Chen's submissions have not been contested, and the submissions provide all the information needed to determine her damages. As such, a hearing on the damages inquest is not necessary.

### A. Defendant's Liability under the Fair Labor Standards Act and New York Labor Law

#### *1. Statute of Limitations under the FLSA and NYLL*

Claims brought under the FLSA must be raised within two years of a non-willful violation, or within three years of a willful violation. See Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (citing 29 U.S.C. § 255(a)). Claims brought pursuant to the NYLL must be raised within six years. See Pineda, 831 F. Supp. 2d at 674 (citing NYLL § 663(1), (3)). Chen commenced her employment with Shanghai Café on April 15, 2012. SAC ¶ 33. She filed her complaint on June 22, 2016. ECF No. 1. Under the FLSA, the applicable statute of limitations would cover claims starting on June 22, 2013, at the most. By contrast, the statute of limitations under the NYLL would cover Chen's claims from the start of her employment in

April 2012, because the six-year limitations period extends back to June 22, 2010.[5] Because the

NYLL provides greater relief relative to the FLSA, the Court awards damages, where

appropriate, under the NYLL. See Schalaudek v. Chateau 20th St. LLC, No. 16 Civ. 11

(WHP)(JLC), 2017 WL 729544, at *5 (S.D.N.Y. Feb. 24, 2017).

### 2. *Applicability of the FLSA and NYLL*

To establish a claim under the FLSA, a plaintiff must show that: "(1) the defendant is an

enterprise participating in commerce or the production of goods for the purpose of commerce;

(2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment

relationship is not exempted from the FLSA." Pelgrift v. 335 W. 41st Tavern Inc., No. 14-CV-

08934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citation omitted). A wage-

and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not

require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual

sales." Tackie v. Keff Enter., Inc., No. 14-CV-2074 (JPO), 2014 WL 4626229, at *2 n.2

(S.D.N.Y. Sept. 16, 2014).

### a. Employment Relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest

of an employer in relation to an employee." 29 U.S.C. § 203(d). The term "employer" is afforded

"an expansive definition with 'striking breadth.'" Mondragon v. Keff, 15-CV-2529 (JPO)

---

[5] Although Defendants may be simultaneously liable under both the FLSA and NYLL, Chen may not recover damages under both the FLSA and NYLL for the same injury. See Hernandez v. Jrpac Inc., No. 14-cv-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016). Where both the FLSA and NYLL apply to a plaintiff's claims, courts apply the statute that provides the greatest measure of damages. See Elisama v. Ghzali Gourmet Deli Inc., No. 14-CV-8333 (PGG) (DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (applying NYLL's six-year statute of limitations because it provided the greatest measure of relief), adopted by 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 498, 505, 515-16 (S.D.N.Y. 2017) (same), aff'd, 752 F. App'x 33 (2d Cir. 2018).

(BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)).

To determine whether Defendants were Chen's "employer" for FLSA purposes, the Court examines the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also very broad, see NYLL § 190(3), "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" Mondragon, 2019 WL 2551536, at *7 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). In the absence of a decision from the New York Court of Appeals answering "the question whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16-CV-7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart, 967 F. Supp. 2d at 924 (internal citation omitted). "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL

and the FLSA." <u>Martin v. Sprint United Mgmt Co.</u>, 273 F. Supp. 3d at 404, 422 (S.D.N.Y. 2017).

Chen alleges that she was an employee of Shanghai Cafe. <u>See</u> SAC ¶¶10, 33; <u>see also</u> Aff. of Cindy Chen ("Chen Aff."), ECF No. 160-6, ¶ 3. Her factual allegations adequately support that assertion. First, Shanghai Café was a restaurant and Chen was employed as a waitress at that restaurant. SAC ¶ 33; Chen Aff. ¶ 3. The work performed by a waitress is integral to the operation of a restaurant. <u>See</u> <u>Tackie</u>, 2014 WL 4626229, at *3 (in assessing whether allegations established an employer-employee relationship under FLSA, court looked at the type of work performed by the employee and its significance to the business of the employer). Moreover, Chen alleges that Wan, Lin, and Gu, the owners and operators of Shanghai Café, had the power to (1) hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records for the restaurant. SAC ¶¶ 17-19, 23-26, 29-30. Chen has thus adequately alleged an employer-employee relationship with Defendants within the meaning of the FLSA and NYLL. And because Defendants were Chen's employers, each one is jointly and severally liable under the FLSA and NYLL for any damages award. <u>See</u> <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 19, 37 (E.D.N.Y. 2015) (imposing joint and several liability on defaulting corporate and individual defendants); <u>Pineda v. Masonry Const., Inc.</u>, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established him as employer under the FLSA and the NYLL).

   b. <u>Interstate Commerce</u>

  Under the FLSA, Chen must establish that she or her employer was engaged in interstate commerce. <u>See</u> <u>Ethelberth v. Choice Sec. Co.</u>, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); <u>see</u> 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which [they are] employed"). Chen has plausibly alleged that Defendants engaged in interstate commerce. Chen alleged that Shanghai Café is a restaurant that "purchased and handled goods [that] moved in interstate commerce," with annual gross sales in excess of $500,000 per year. SAC ¶¶ 13-14. Shanghai Café is located in Manhattan and "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." <u>Cabrera v. Canela</u>, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (quoting <u>Archie v. Grand Cent. P'ship, Inc.</u>, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)); <u>see also</u> <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 33-34 (E.D.N.Y. 2015). These allegations are sufficient to satisfy the interstate commerce elements for FLSA liability.

   c. <u>Unpaid Minimum Wages</u>

  The FLSA and NYLL require employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week ("Straight Time Wages"). <u>See</u> 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146-1.2. The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, <u>see</u> 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage. <u>See</u> 29 U.S.C. § 218(a). "[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be

correct." Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." Hart v. Rick's Cabaret Int'l Inc., 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) ("Hart II") (citing IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005)). A meal break is "bona fide" when the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). Where the plaintiff "asserts that [she] did not receive any meal or rest breaks[,]" "all of [her] time worked [will be] compensable." Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), adopted by, No. 16 Civ. 8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021). The NYLL requires certain employers to provide: (1) a meal period of at least thirty minutes for employees who work a shift of more than six hours over the time period encompassing 11:00 a.m. to 2:00 p.m.; (2) an additional twenty-minute meal period between 5:00 pm and 7:00 p.m. for employees whose shift started before 11:00 a.m. and continued later than 7:00 p.m.; and/or (3) a forty-five minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six (6) hours and starts between 1:00 pm and 6:00 a.m. See NYLL § 162(2)–(4).

Chen alleges that she never received a meal break of at least thirty minutes. SAC ¶¶ 41-42. She also alleges that her shifts lasted more than six hours and started at 11 a.m. Id. ¶ 34. Accordingly, all of the time Chen worked is compensable. Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020).

Employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage. 29 U.S.C. § 203(m)(2); 12 N.Y.C.R.R. § 146-

1.3(b); see Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016). "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites." Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015). These prerequisites include the requirement that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes." Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010). The employer bears the burden of proving that this notice was given. See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).

The NYLL also allows an employer to pay tipped food service workers a lower minimum wage under certain conditions. See NYLL § 652(4). "An employer may receive the benefit of this tip credit only if the employer provides 'to each employee a statement with every payment of wages listing . . . allowances claimed as part of the minimum wage' and 'maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each employee . . . allowances . . . claimed as part of the minimum wage.'" Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009)); 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2. Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages. See Reyes, 2019 WL 5722475, at *5; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).

Chen, who worked as a waitress at the restaurant, was a tipped employee. Chen Aff. ¶¶ 3, 7; SAC ¶¶ 10, 43-45. Chen alleges that Defendants never informed her that they were "taking tip credits towards the minimum wage." SAC ¶¶ 43-44; Chen Aff. ¶ 7. She also alleges that she was paid a flat rate of $125 per week, working 57 hours per week. SAC ¶¶ 35-36, 38-39. Because Defendants failed to meet the notice requirements in the FLSA and the NYLL, they are not entitled to any tip credit against the minimum wage. See Schalaudek, 2017 WL 729544, at *7 (citing 12 N.Y.C.R.R. § 146-1.3). Accordingly, Defendants were required to pay Chen's full minimum hourly wage, rather than the lower minimum wage for tipped workers. See Cao, 2010 WL 4159391, at *2.

The New York State minimum-wage rate during Chen's employment at Shanghai Café was as follows: $7.15 between April 15, 2012, and December 30, 2013; $8.00 between December 31, 2013, and December 30, 2014; $8.75 between December 31, 2014, and December 30, 2015; $9.00 between December 31, 2015, and January 26, 2016. See NYLL § 652 (listing applicable minimum-wage rate by time period). Chen alleges that she was not paid in accordance with these statutory minimums during her employment, from April 15, 2012, through January 26, 2016. Instead, Chen alleges that she was paid a flat rate of $125 per week regardless of the hours she worked. See SAC ¶¶ 33, 38, 77. Accordingly, Chen is entitled to recover straight time (minimum) wages for the amount by which she was underpaid by Defendants. See Agureyev v. H.K. Second Ave. Restaurant, Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (finding that plaintiffs were entitled to damages for unpaid minimum wages).

d.  Unpaid Overtime Wages

To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [she] worked compensable overtime in a workweek longer than 40

hours." <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 114 (2d Cir. 2013);

<u>Tackie</u>, 2014 WL 4626229, at *3. "The FLSA and the NYLL carry a rebuttable presumption that

a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."

<u>Pinovi v. FSS Enters., Inc.</u>, No. 13-CV-2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y.

July 8, 2015); <u>see</u> <u>Rosendo v. Everbrighten Inc.</u>, No. 13-CV-7256 (JGK) (FM), 2015 WL

1600057, at *3 (S.D.N.Y. Apr. 7, 2015) ("[W]hen an employer has defaulted and offers no

rebuttal, the Court calculates the employee's regular hourly rate by dividing his weekly salary by

forty hours.").

   The complaint alleges that Chen worked 57 hours per week without an overtime premium

for the 17 hours she worked in excess of 40 hours each week. <u>See</u> SAC ¶¶ 35, 38, 43, 48. These

allegations adequately state a claim for unpaid overtime wages under the FLSA and the NYLL.

<u>See</u> <u>Mondragon</u>, 2019 WL 2551536, at *9.

   e.   <u>Unpaid Spread-of-Hours Pay</u>

   Under the NYLL, an employee must "receive one hour's pay at the basic minimum

hourly wage rate" in addition to the regular minimum wage for each workday "in which . . . the

spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4(a). "The term 'spread of hours' is

defined as 'the length of the interval between the beginning and end of an employee's workday .

. . includ[ing] working time plus time off for meals plus intervals off duty.'" <u>Inclan v. N. Y.</u>

<u>Hospitality Grp., Inc.</u>, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (citing 12 N.Y.C.R.R. § 146–

1.6). Section 663 of the NYLL expressly authorizes an employee to sue her employer to recover

unpaid wages otherwise due to her under the statute. N.Y. Labor Law § 663(1). There is no

counterpart under the FLSA for New York's spread-of-hours claim. <u>See</u> <u>Fermin</u>, 93 F. Supp. 3d

at 45. An employee may recover spread-of-hours wages in addition to federal and state overtime

wages. <u>See</u> <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 339-41 (S.D.N.Y. 2005).

"By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor." Espinosa v. Delgado Travel Agency, Inc., No. 05-CV-6917 (SAS), 2007 WL 656271, at *2 (S.D.N.Y. Mar. 2, 2007); see also Almeida v. Aguinaga, 500 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2007) (collecting cases). However, as of January 1, 2011, employers are required to pay a spread-of-hours premium for "all employees in restaurants and all-year hotels, *regardless* of a given employee's regular rate of pay." 12 N.Y.C.R.R. § 146–1.6(d) (emphasis added); see also Flores v. Anjost Corp., 284 F.R.D. 112, 118-19 (S.D.N.Y. 2012); 12 N.Y.C.R.R. § 146-3.1(b) (defining "restaurant").

Here, Chen worked as a waitress at a restaurant. SAC ¶ 33. She alleges that she worked 11 hours a day three days a week and 12 hours a day two days per week. SAC ¶ 51; Chen Aff. ¶ 11. Additionally, Chen alleges that she was not paid a spread-of-hours premium for shifts that lasted longer than 10 hours. SAC ¶ 49. Chen has thus established an entitlement to recover spread-of-hours pay. See Fermin, 93 F. Supp. 3d at 45-46 (allowing restaurant employees to recover spread-of-hours pay).

  f.   Statutory Wage Notices and Statements

Chen also seeks statutory damages for Defendants' failure to provide wage notices and wage statements, as required by New York's Wage Theft Prevention Act ("WTPA"), and NYLL §§ 195(1), (3). See SAC ¶¶ 120-28. The WTPA requires employers to provide, with every payment of wages, a statement that lists the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

14

N.Y. Lab. Law § 195(3).

The WTPA also requires that employers furnish each employee with a wage notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

N.Y. Lab. Law § 195(1)(a). As of April 9, 2011, and prior to December 29, 2014, the WTPA required employers, in addition to the wage notice at time of hiring, to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014). Following December 29, 2014, the WTPA was amended such that the annual February notice is no longer required. See N.Y. Lab. Law § 195(1)(a).

Chen alleges that she never received a written wage notice at the time of hiring or any time thereafter, as required under NYLL § 195(1). SAC ¶¶ 43, 122-23. Because Defendants are in default, the Court accepts Chen's allegations that Defendants failed to provide the required wage notice. See Xochimitl, 2016 WL 4704917, at *14 (awarding plaintiff statutory damages under NYLL §§ 195(1) and (3) where Defendant defaulted).

Chen also alleges that she did not receive written wage statements with her pay. SAC ¶ 127. In her affidavit, however, Chen states that "each [pay] check came with a paystub." Chen Aff. ¶ 16. Further, Chen has attached copies of some of these pay stubs to her damages submissions, and the pay stubs appear to contain at least some of the information required under

15

NYLL § 195(3), such as the name of the employer, the name of the employee, and the amount of gross wages. Chen has thus not established her entitlement to statutory damages under NYLL § 195(3).

    g.   Failure to Comply with New York's Record-Keeping Requirements

Chen's Ninth Cause of Action asserts a claim for violation of 12 N.Y.C.R.R. § 146-2.1, which requires employers to "establish, maintain and preserve for at least six years weekly payroll records." See SAC ¶¶ 115-19; see also N.Y.L.L. § 195(4); 12 N.Y.C.R.R. § 146-2.1. This claim fails, however, because "no independent cause of action for violations of New York's recordkeeping requirements exists." Wuzi Jiao v. Kitaku Japanese Rest., Inc., No. 16-cv-2694 (RRM) (RML), 2020 WL 2527588, at *15 (E.D.N.Y. Mar. 13, 2020) (internal quotation marks and citations omitted); see also In re Domino's Pizza Inc., No. 16 Civ. 6274 (AJN), 2018 WL 1587593, at *6-7 (S.D.N.Y. Mar. 27, 2018) (dismissing claim because no independent cause of action exists). Chen is thus not entitled to damages for any record-keeping violations.

    h.   Failure to Provide a Meal Break

Chen also seeks damages for Defendants' failure to afford her meal breaks pursuant to N.Y. Labor Law § 162, which provides that "[a]n employee who works a shift of more than six hours which extends over the noon day meal period is entitled to at least thirty minutes off within that period for the meal period." N.Y.L.L. § 162(2); see also SAC ¶¶ 110-14. This claim also fails because there is no private right of action for violations of N.Y. Labor Law § 162. Wuzi Jiao, 2020 WL 2527588, at *14; see also In re Domino's Pizza Inc., 2018 WL 1587593, at *3. Chen is thus not entitled to any damages for violations of this provision.

    i.   Unlawful Tip Retention under the FLSA and NYLL

Chen also claims that Defendants unlawfully retained tips in violation of New York Labor Law and the FLSA. See SAC ¶¶ 101-09. The misappropriation of tips is prohibited by

NYLL § 196-d, which states that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d; see also 12 N.Y.C.R.R. §§ 146–2.14, 146–2.15, 146–2.16 (prohibiting tip sharing and tip pooling with employees for whom "personal service to patrons" is not "a principal and regular part of their duties").

The Second Amended Complaint alleges that Chen worked as a waitress from April 15, 2012, to January 26, 2016, and that during that time Defendants illegally misappropriated tips from her on a weekly basis. SAC ¶¶ 33, 45-47. According to Chen, the tips were shared with employees who did not customarily receive tips, including defendant Wan—an owner of Shanghai Café who also worked as a cashier. Id. ¶¶ 17, 46. Chen's allegations establish that Defendants are liable, under the NYLL, for the misappropriation of her tips. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 89 (E.D.N.Y. 2012) (explaining that plaintiff was "entitled to the reimbursement of the portion of her tips the Restaurant improperly required her to share with the chef"); see also Fermin, 93 F. Supp. 3d at 40 (concluding that plaintiff had established liability for misappropriated tips under NYLL § 196-d, where complaint alleged that defendant had shared tips with employees who did not customarily receive tips).

Chen also asserts a claim for unlawful tip retention under the FLSA. SAC ¶¶ 101-04. The FLSA and NYLL permits employers in some circumstances to apply a tip credit against the full minimum wage that would otherwise be owed to an employee, such as a waiter, who regularly receives tips. See 29 U.S.C. § 203(m) (the federal tip credit provision); 12 N.Y.C.R.R. § 146–1.3 (the tip credit provision of the Hospitality Wage Order); see also Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 240 (2d Cir. 2011) (explaining application of the tip credit under

the FLSA); <u>Barenboim v. Starbucks Corp.</u>, 698 F.3d 104, 110 n.1 (2d Cir. 2012) (explaining application of the tip credit under the NYLL); <u>Mendez v. Int'l Food House Inc.</u>, No. 13 Civ. 2651 (JPO), 2014 WL 4276418, at *3 (S.D.N.Y. Aug. 28, 2014) (discussing the federal and New York tip-credit provisions). An employer, however, may not avail itself of the trip credit under the FLSA "if it requires [tipped] employees to share their tips with employees who do not customarily and regularly receive tips," such as managers or kitchen workers. <u>Fonseca v. Dircksen & Talleyrand Inc.</u>, No. 13 Civ. 5124 (AT), 2014 WL 1487279, at *2 (S.D.N.Y. Apr. 11, 2014); <u>see</u> 29 U.S.C. § 203(m); <u>Wicaksono v. XYZ 48 Corp.</u>, No. 10 Civ. 3635 (LAK)(JCF), 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011), <u>report & recommendation adopted</u>, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2038973 (S.D.N.Y. May 24, 2011). An employer therefore "loses its entitlement to the tip credit when it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." <u>Shahriar</u>, 659 F.3d at 240.

Chen alleges that, while she worked as a waitress, Defendants shared the tip pool with non-tipped employees, such as a cashier who was also an owner of the restaurant and a kitchen worker responsible for steaming dumplings. SAC ¶¶ 33, 45-47. Because Defendants shared the tip pool with workers who were managers or who did not provide direct customer service, Defendants are not entitled to a tip credit here. <u>See</u> <u>Fermin</u>, 93 F. Supp. 3d at 39. However, Chen cannot hold Defendants liable under the FLSA for repayment of tips they illegally retained; that claim is available only under the NYLL. <u>Wicaksono</u>, 2011 WL 2022644, at *7 n.3 (explaining that the FLSA "prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage" and "[o]nly New York law explicitly prohibits the retention of an employee's tips by individuals other than 'similar' employees"); <u>see also</u> <u>Fermin</u>,

93 F. Supp. 3d at 40 n.9. Thus, although Chen has a claim under the NYLL for reimbursement of tips that Defendants illegally retained, she does not have a similar claim under the FLSA.

**B.  Defendants' Liability for Plaintiff's non-FLSA claims**

*1.  General Business Law § 349*

In her complaint, Chen asserts a claim for violation of General Business Law § 349 (see SAC ¶¶ 132-35)—a statute that was "designed to protect consumers from various forms of consumer fraud and deception." Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004). A claim under Section 349 requires three elements: "[F]irst, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). Chen does not allege a plausible claim for violation of Section 349 by Defendants. There are no factual allegations in the Second Amended Complaint from which to conclude that any of the three elements of a Section 349 claim have been pled. As such, Chen has not established that she is entitled to any damages for violation of that statute.

*2.  26 U.S.C. § 7434*

Plaintiff also asserts a claim for civil damages for the fraudulent filing of tax returns under 26 U.S.C. § 7434. See SAC ¶¶ 129-31. That statute provides a private right of action for an individual who was the subject of a falsely filed information return, allowing her to bring a civil action for damages against 'any person [who] willfully files a fraudulent information return with respect to payments purported to be made to' the individual." Rosario v. Fresh Smoothies LLC, No. 20-CV-5831 (LJL), 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021). "Information return" for purposes of the statute includes forms containing, for example, the total amount of wages paid to an employee. See 26 U.S.C. §§ 7434(f), 6724(d)(1)(A)(vii), 6501(d). There are no factual allegations in the Second Amended Complaint to establish that Defendants filed a fraudulent

information return with the Internal Revenue Service. <u>Cf.</u> <u>Rosario</u>, 2021 WL 5847633, at *6

(reasoning that plaintiff had pled a claim under § 7434 for entry of default judgment where

complaint alleged that defendants "filed with the IRS a W-2 reflecting only the wages that

Plaintiff was paid by check" and not including the wages paid in cash). Although Chen alleges

that she received part of her pay in a check and part in cash, there are no allegations that

Defendants filed anything with the Internal Revenue Service with respect to Chen's wages. <u>See</u>

SAC ¶¶ 36, 39-40, 130-31. And including the language of the statute and summarily stating that

there is an entitlement to damages, as Chen has done here, is not sufficient to properly plead a

claim under 26 U.S.C. § 7434. <u>Id.</u> ¶ 130. Accordingly, Chen has not alleged a claim under 26

U.S.C. § 7434 and therefore is not entitled to recovery of damages under that statute.

### C.  <u>Plaintiff's Damages</u>

No party has requested a hearing on the issue of damages and Defendants have not

submitted any written materials. The Court has thus conducted its inquest based solely on the

materials Chen submitted in support of her request for damages. <u>See</u> <u>Cement & Concrete</u>

<u>Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.</u>, 699 F.3d 230, 234 (2d

Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon

evidence presented at a hearing or upon a review of detailed affidavits and documentary

evidence."). In support of her damages submission, Chen has filed an affidavit attesting to the

dates and circumstances of her employment. <u>See</u> ECF No. 160-6. Defendants have not responded

to Chen's motion or submitted contrary evidence.

An employee seeking to recover unpaid wages "has the burden of proving that [she]

performed work for which [she] was not properly compensated." <u>Jiao v. Chen</u>, No. 03-CV-165

(DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting <u>Anderson v. Mt. Clemens</u>

Pottery Co., 328 U.S. 680, 687 (1946)). Under both the FLSA and the NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him." Calle v. Yoneles Enters., Inc., No. 16-CV-1008 (NGG), 2017 WL 6942652, at *11 (E.D.N.Y. 2017) (citation omitted). A defaulting defendant, however, "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011). Consequently, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." Elisama v. Ghzali Gourmet Deli Inc., 2016 WL 11523365, at *4 (S.D.N.Y. 2016) (citation omitted).

1.  *Unpaid Minimum Wages*

Chen asserts a claim for violation of the FLSA's minimum-wage requirement, alleging that Defendants failed to pay the statutorily required hourly minimum wage. SAC ¶¶ 76-79. Chen also asserts a similar claim under the NYLL. SAC ¶¶ 80-84. "The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." Pinovi, 2015 WL 4126872, at *4; see Rosendo, 2015 WL 1600057, at *3. The Court then "calculates the employee's regular hourly rate by dividing [her] weekly salary by forty hours." Id. As of January 1, 2011, New York law also provides that "where an employer fails to pay a restaurant employee an hourly rate of pay, 'the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.'" Xochimitl v. Pita Grill of Hell's Kitchen, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *6 (S.D.N.Y. Sept. 8, 2016), adopted by, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) (quoting 12 N.Y.C.R.R. § 146-3.5).

Chen attests that she worked 57 hours per week for a fixed payment of $100 every week from April 15, 2012, until about January 2015. See Chen Aff. ¶¶ 3, 11-14. After January 2015, Chen received $125 per week, until she was terminated in January 2016.[6] Chen Aff. ¶ 15. Accordingly, Chen was paid $2.50 per hour between April 15, 2012, and around January 2015.[7] After January 2015, Chen received a regular hourly rate of $3.125.[8] As discussed, however, Defendants were required to pay Chen straight time wages at New York's statutory minimum wage for the first 40 hours that she worked each week. Further, Chen attests that during the term of her employment, she had no "designated rest break" and would work through her meal break. Chen Aff. ¶ 13. And, as discussed, Defendants are not entitled to a tip credit towards the full minimum hourly wage owed to Chen. Finally, Chen took the following time off for vacation during the term of her employment: three weeks in August or September 2013; four weeks in 2014; and two weeks in July or August 2015. Chen Aff. ¶ 4.

Having reviewed Chen's damages submissions (see ECF No. 160-14), the Court disagrees with Chen's calculation of the straight time (minimum) wage she is owed. Instead, as illustrated in the chart below, Chen is entitled to an award of unpaid straight time wages in the amount of $38,386.

---

[6] In her affidavit, Chen states that she was employed at Shanghai Café until March 14, 2016, whereas in her complaint, she alleged that she worked until January 26, 2016. Compare Chen Aff. ¶ with SAC ¶ 33. In assessing actual damages following a default, inconsistencies in the plaintiff's statements should be resolved in favor of the defendant. Diaz v. AJE Management Corp., 2017 WL 746439, at 3 (S.D.N.Y. Jan. 10, 2017). Because it is Chen's burden to establish the damages she suffered, the Court uses January 26, 2016, for purposes of calculating Chen's damages.

[7] The $2.50 hourly rate was calculated by dividing $100 by 40 hours.

[8] The $3.125 hourly rate was calculated by dividing $125 by 40 hours.

| Time Period | New York State Minimum-Wage Rate | Chen's Hourly Wage | Unpaid Minimum Hourly Wage | Straight-Time Hours Worked During Time Period[9] | Straight-Time Wages Awarded[10] |
|---|---|---|---|---|---|
| 4/15/12-12/30/13 | $7.15 | $2.50 | $4.65 | 3,440[11] | $15,996 |
| 12/31/13-2/30/14 | $8.00 | $2.50 | $5.50 | 1,920[12] | $10,560 |
| 12/31/14-1/30/15 | $8.75 | $2.50 | $6.25 | 160 | $1,000 |
| 2/1/15-12/30/15 | $8.75 | $3.125 | $5.625 | 1,800[13] | $10,125 |
| 12/31/15-1/26/16 | $9.00 | $3.125 | $5.875 | 120 | $705 |

### 2. Unpaid Overtime Wages

The Court calculates appropriate overtime wages "by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half," then by multiplying that rate "by the number of hours in excess of forty hours the employee worked each week." Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015). Chen attests that she

---

[9] The "straight time hours worked during time period" was calculated by determining the number of weeks in the "time period" and multiplying that by 40 hours.

[10] The "straight time wages awarded" was calculated by multiplying the unpaid minimum hourly wage by the straight time hours worked during the relevant time period.

[11] In this time period, there are 89 weeks. Three weeks were subtracted for Chen's vacation. As such, the number of hours in this time period was based on 86 weeks.

[12] There are 52 weeks in this time period. Four weeks were subtracted for Chen's vacation, for a total of 48 weeks.

[13] There are 47 weeks in this time period. Two weeks were subtracted for Chen's vacation. The number of hours in this time period was thus calculated based on 45 weeks.

worked 57 hours per week throughout the entirety of her employment at Shanghai Café. Chen Aff. ¶ 11. Chen thus worked 17 hours in excess of 40 hours per week without overtime compensation. As calculated in the chart below, Chen is entitled to an award of $37,094 in unpaid overtime wages.

| Time Period | New York State Minimum-Wage Rate | Chen's Overtime Hourly Wage | Hours Worked in Excess of 40 | Number of Weeks in the Time Period | Overtime Wages Awarded[14] |
|---|---|---|---|---|---|
| 4/15/12-12/30/13 | $7.15 | $10.725 | 17 | 86 | $15,680 |
| 12/31/13-12/30/14 | $8.00 | $12.00 | 17 | 48 | $9,792 |
| 12/31/14-1/30/15 | $8.75 | $13.125 | 17 | 4 | $892.50 |
| 2/1/15-12/30/15 | $8.75 | $13.125 | 17 | 45 | $10,041 |
| 12/31/15-1/26/16 | $9.00 | $13.50 | 17 | 3 | $688.50 |

3. *Unpaid Spread-of-Hours Pay*

Chen worked in excess of 10 hours per day during her five-day work week, for the entirety of her employment with Defendants. Chen Aff. ¶ 11. New York law thus entitles her to an extra hour's worth of pay at the state minimum wage for each day she worked for Defendants. See Espinoza v. Broadway Pizza & Rest. Corp., No. 17-CV-7995 (RA) (KHP), 2021 WL 7903991, at *8 (S.D.N.Y. Nov. 18, 2021), adopted by, 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022); see also 12 N.Y.C.R.R. § 142-2.4. As illustrated in the chart below, Chen is entitled to an award of $7,273.25 in unpaid spread-of-hours pay.

---

[14] "Overtime wages awarded" was calculated by first multiplying the "hours worked in excess of 40" by "Chen's overtime hourly wage," the result of which was multiplied by the "number of weeks in the time period."

| Time Period | State Minimum-Wage Rate | Spread-of-Hours Pay Per Week[15] | Number of Weeks in Time Period | Spread-of-Hours Pay Awarded |
|---|---|---|---|---|
| 4/15/12-12/30/13 | $7.15 | $35.75 | 86 | $3,074.50 |
| 12/31/13-12/30/14 | $8.00 | $40 | 48 | $1,920 |
| 12/31/14-1/30/15 | $8.75 | $43.75 | 4 | $175 |
| 2/1/15-12/30/15 | $8.75 | $43.75 | 45 | $1,968.75 |
| 12/31/15-1/26/16 | $9.00 | $45 | 3 | $135 |

4. *Recovery of Unlawfully Retained Tips under NYLL*

Chen seeks recovery of the tips she received that Defendants unlawfully retained. See

SAC ¶¶ 101-09. As discussed, the NYLL allows for recovery by a plaintiff of the portion of the

plaintiff's tips that were misappropriated by the employer. See, e.g., Fermin, 93 F. Supp. 3d at

40. Chen's affidavit explains that she "typically received more than $100.00 in tips from the tip

pool each day, about $700 per week." Chen Aff. ¶ 18. Chen explains the amount of tips she

received from the pool. But nowhere does she attest to the amount of tips she typically received

from customers, that Defendants required her to place into the tip pool. See, e.g., Fermin v. Las

Delicias Peruanas Rest., Inc., No. 14-CV-559, Dkt. Entry No. 11, ¶ 19 (Plaintiff affidavit

explaining the amount of tips he earned and the amount Defendants allowed him to keep). It is

thus not possible for the Court to determine the amount of tips that were misappropriated by

Defendants—that is, the amount of tips beyond $100 per day that Chen was entitled to but did

---

[15] The "spread-of-hours pay per week" was calculated by multiplying the "state minimum-wage rate" by five, which represents the number of days per week that Chen worked more than 10 hours per day.

not receive. Chen has thus not proven the amount of misappropriated tips to which she is entitled.

   5. *Liquidated Damages*

   Chen also seeks liquidated damages. <u>See</u> SAC ¶ H (Prayer for Relief). Under the FLSA, "a plaintiff who demonstrates that [s]he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'" <u>Xochimitl v. Pita Grill of Hell's Kitchen, Inc.</u>, No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C. § 216(b)), <u>adopted by</u> 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016). "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages. <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260). This burden is "a difficult one," <u>id.</u> (quoting <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." <u>Guaman v. J & C Top Fashion, Inc.</u>, No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016). A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'" <u>Kernes v. Glob. Structures, LLC</u>, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting <u>Angamarca v. Pita Grill 7 Inc.</u>, No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes an award of liquidated damages. See Xochimitl, 2016 WL 4704917, at *15; see also NYLL § 198(1-a). Effective November 24, 2009, an employee is "entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" Xochimitl, 2016 WL 4704917, at *15 (quoting NYLL § 198(1-a)). "Courts deem defendants' actions willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'" Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7). Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages. NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL. See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11. A plaintiff should recover "under the statute that provides the greatest relief." Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted). The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not. See Valdez v. H & S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016). The NYLL therefore provides greater relief. See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see Mondragon, 2019 WL 2551536, at *11, and therefore, Chen is entitled to liquidated damages equivalent to 100% of her unpaid wages set forth above. See Schalaudek,

27

2017 WL 729544, at *10 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted). Chen is entitled to an award in the amount of $82,753.25 for unpaid straight time wages, overtime wages, and spread-of-hours pay. Chen is therefore entitled to an award of liquidated damages in the same amount.

### 6.  *Statutory Damages*

Chen also seeks statutory damages for Defendants' failure to provide wage notices, both at the time of hiring and with each paycheck, as required under NYLL §§ 195(1) and 195(3). See SAC ¶¶ 120-28. NYLL § 198 sets the amount of statutory damages an employee may recover for violations of Section 195. An employee may recover $50 dollars for each work day that he has not received the wage notice required by Section 195(1), up to the statutory maximum of $5,000. See N.Y. Lab. Law § 198(1-b). Chen attests that she never received a written wage notice at the time of hiring or any time thereafter. Chen Aff. ¶ 7. Because Defendants are in default, the Court accepts Chen's allegations that Defendants failed to provide the required written wage notices. See Xochimitl, 2016 WL 4704917, at *14 (awarding plaintiff statutory damages under NYLL §§ 195(1) and (3) where Defendant defaulted). Chen worked for more than 100 days (the number of days at which the $50 per day penalty equals the statutory maximum penalty of $5,000). And Defendants violated the wage-notice requirement for the entirety of Chen's employments. Chen is thus entitled to an award of $5,000 for violation of the wage-notice provision in Section 195(1). As already discussed, Chen has not established that she is entitled to statutory damages under NYLL § 195(3), for the failure to provide written wage statements.

### 7.  *Prejudgment Interest*

Chen also requests and is entitled to prejudgment interest under the NYLL. See N.Y. Lab. Law § 663; see Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 265 (2d Cir. 1999) (finding that the NYLL permits an award of both liquidated damages and prejudgment interest); see also

Pineda v. Tokana Cafe Bar Restorant Inc., No. 16-CV-1155 (JPO), 2017 WL 1194242, at *4 (S.D.N.Y. 2017) ("Prejudgment interest may be awarded in addition to liquidated damages under NYLL but not under the FLSA."); see also SAC ¶ N (Prayer for Relief). A plaintiff may recover prejudgment interest only on her actual damages under the NYLL, not on her liquidated damages under the state law. Gamero, 272 F. Supp. 3d at 515.

The statutory rate of interest is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. Id. § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. See Gamero, 272 F. Supp. 3d at 515.

To calculate prejudgment interest, the Court must multiply the total amount of Plaintiff's compensatory damages (for straight-time wages, overtime wages, and spread of hours wages) by an interest rate of nine percent which will yield the amount of prejudgment interest per year. Chen began her employment on April 15, 2012, the earliest date on which her NYLL statute of limitations period began, and her employment ended on January 26, 2016. For calculating prejudgment interest, the approximate midpoint date between those two limits is March 6, 2014. Accordingly, Chen should receive prejudgment interest on her entire compensatory damages of $82,753.25, at an interest rate of nine percent per year as applied from March 6, 2014, to the date of entry of judgment.

8. *Post-Judgment Interest*

Chen also seeks an award of post-judgment interest. SAC ¶ N (Prayer for Relief). A plaintiff is "entitled to post-judgment interest on all money awards as a matter of right." Tacuri v. Nithin Constr. Co., No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (citations omitted). According to 28 U.S.C. § 1961(a), an award of post-judgment interest

is mandatory in any civil case where money damages are recovered. See Espinoza, 2021 WL 7903991, at *14. Chen is thus entitled to an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. See Begum v. Ariba Discount, Inc., No. 12-CV-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest).

### D. **Attorneys' Fees & Costs**

The FLSA and NYLL both provide for an award of reasonable attorneys' fees to successful plaintiffs. See 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1). Chen was represented by John Troy, of Troy Law, PLLC. See Decl. of John Troy ("Troy Decl."), ECF No. 162. Chen seeks an award of attorneys' fees in the amount of $135,623 for 290.52 hours of work on this case. See id. at ¶¶ 53, 55. In support of Chen's application, Plaintiff's counsel submitted billing records showing the date on which the services were performed, the time expended, and a description of the services completed. See ECF No. 162-1.

Awards of attorneys' fees are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

Courts in this District have determined that a "fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases." Pastor v. Alice Cleaners, Inc., No. 16-CV-7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017); see also Lopez v. Emerald Staffing, Inc., No. 18-CV-2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour."). "[A]s for associates, rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years' experience, while associates with one to three years of experience have been awarded rates ranging from $150 to $200 per hour." Singh v. Meadow Hill Mobile Inc., No. 20-CV-3853 (CS) (AEK), 2021 WL 4312673, at *16 (S.D.N.Y. Aug. 9, 2021), adopted by, 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021).

In assessing whether the number of hours billed by an attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). Plaintiff bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." Scott v. City of New York, 626 F.3d 130, 133-34 (2d Cir. 2010) (citation omitted); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020).

Courts exercise "considerable discretion" in awarding attorneys' fees. See D.B. ex rel. S.B. v. New York City Dep't of Educ., 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (internal quotation marks and citation omitted), adopted by, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010); Arbor Hill, 522 F.3d at 190. However, when awarding attorneys' fees, the court must "clearly and concisely state

31

reasons supporting the award." <u>Tackie v. Keff Enters. LLC</u>, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (citing <u>Hensley</u>, 461 U.S. at 437; and <u>Matusick v. Erie Cnty. Water Auth.</u>, 757 F.3d 31, 64 (2d Cir. 2014)) (awarding attorneys' fees under FLSA and NYLL).

1. *Reasonable Hourly Rate & Hours Expended*

The Troy Law Firm is seeking fees on behalf of five attorneys, John Troy, Aaron Schweitzer, George Byun, Shuyang Xie, and Leanghour Lim. <u>See</u> ECF No. 162. Troy, the attorney of record for Chen, seeks a fee of $650 per hour. Schweitzer seeks a fee of $400 per hour. Byun seeks a fee of $350 per hour. Xie and Lim seek a fee of $250 per hour. Plaintiff's counsel also seeks an award of fees for work performed by two paralegals, Ellen Chen and Tiffany Troy, at an hourly rate of $150 each, and for work performed by Preethi Kilaru.[16] <u>See</u> ECF No. 162 at 30-32. As has been documented by other courts in this District, courts "have balked at the sort of rates requested" by members of the Troy Law Firm. <u>See</u> <u>Garcia</u>, 2022 WL 2698434, at * 7 (collecting cases); <u>see also</u> <u>Chen v. Marvel Food Servs. LLC</u>, 15-CV-06206 (JMA) (AYS), 2022 WL 4226098, at *4-5 (E.D.N.Y. Sept. 9, 2022). Indeed, courts have repeatedly reduced the rates requested by John Troy "in light of the consistently poor quality of his work." <u>See, e.g.</u>, <u>Rodpracha v. Pongsri Thai Rest. Corp.</u>, No. 14-CV-02451 (DF), 2021 WL 6205861, at *3 (S.D.N.Y. Dec. 29, 2021). The quality of counsels' work here has been no different.

---

[16] Troy's Declaration does not explain the type of work Kilaru performed at the firm while working on this case. Nor does it describe her as an associate, even though she appears to have an LLM. <u>See</u> ECF No. 162 at 29. It appears that Kilaru previously worked at the firm as a legal assistant, not an attorney, <u>id.</u>, and her billing entries here suggest that she performed the work of a legal assistant, <u>see</u> ECF No. 162-1 at 8. Given the lack of information concerning Kilaru, the Court will award her an hourly rate commensurate with an individual who performed the work of a legal assistant.

Consequently, the Court will reduce the proposed hourly rates as follows: $300 per hour for John Troy, $150 per hour for Aaron Schweitzer, and $70 per hour for Preethi Kilaru. Those hourly rates for those individuals are the exact amounts recently approved in a fee award by the Honorable John P. Cronan in a wage-and-hour case where the defendant also defaulted. See Garcia, 2022 WL 2698434 at *8. Judge Cronan also previously awarded Tiffany Troy a rate of $150 per hour, the rate she requests here, and the Court adopts that rate. Id. For George Byun and Shuyang Xie, the Court reduces the requested hourly rates to $160 per hour and $110 per hour, respectively. Those rates were recently awarded by courts in this Circuit to those individuals. See Yuajian Lin v. La Vie En Schezuan Rest. Corp., No. 15-CV-9507 (DF), 2020 WL 1819941, at *5 (S.D.N.Y. Apr. 9, 2020) (reasonable rate for Byun); Sun v. Sushi Fussion Exp., Inc., No. 16-CV-4840 (RPK) (LB), 2022 WL 2193441, at *3 (E.D.N.Y. June 17, 2022) (reasonable rate for Xie). For Leanghour Lim, who evidently is a former associate at Troy Law, a recent decision of another court concluded that an hourly rate of $125 was reasonable. See Lu Wan v. YWL USA Inc., No. 17-CV-1015 (JBW) (RML), 2021 WL 1905036, at *6 (E.D.N.Y. Mar. 12, 2021). The Court adopts that rate for Lim. For Ellen Chen, the Court adopts an hourly rate of $100, which is consistent with the hourly rate approved by other Courts in this District for paralegals at Troy Law.[17] See Garcia, 2022 WL 2698434 at *8; Singh, 2021 WL 3862665, at *17.

Chen's counsel has requested an award of fees for approximately 290 hours of work. Although the hours are far in excess of what is typically awarded in wage-and-hour cases where the defendant defaults, this is not the typical default-judgment case. Defendants initially appeared, answered the complaint, and defended the action. Indeed, the case was ready for trial

---

[17] Chen is a legal assistant who graduated in 2019 from the University of Edinburgh with a Master of Science in Management. See ECF No. 162 at 30.

in December 2019, and was scheduled to have proceeded to a jury trial in February 2020. <u>See</u> ECF No. 79. However, one month before trial, counsel for Defendants withdrew and Defendants ultimately failed to comply with Court orders and stopped communicating with Plaintiff's counsel, resulting in the entry of default. <u>See</u> ECF Nos. 90, 95, 124, 126, 135-39.

Nevertheless, a review of the billing records provided by Plaintiff's counsel indicates that the amount of hours expended was excessive. "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours," <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999), as well as time entries that "are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed," <u>Wen v. Hair Party 24 Hours Inc.</u>, No. 15-CV-10186 (ER) (DCF), 2021 WL 3375615, at *14 (S.D.N.Y. May 17, 2021) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)), <u>adopted by</u>, 2021 WL 2767152 (S.D.N.Y. July 2, 2021). To calculate reasonable hours expended in litigating a case, "[a] district court may . . . use a percentage deduction as a practical means of trimming fat." <u>McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund</u>, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted); <u>see also</u> <u>Green v. City of New York</u>, 403 F. App'x 626, 630 (2d Cir. 2010) (recognizing "the authority of district courts to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application").

In another wage-and-hour case that actually proceeded to a bench trial, the Troy Law Firm expended less hours than here—specifically, 248.94 hours. <u>See</u> <u>Yuajian Lin v. La Vie En Schezuan Rest. Corp.</u>, No. 15 Civ. 9507(DF), 2020 WL 1819941, at *1-2 (S.D.N.Y. Apr. 9, 2020); <u>see also</u> <u>Wang v. Yong Lee Inc.</u>, No. 17-CV-9582 (JPO), 2022 WL 17756593, at *2 (S.D.N.Y. Dec. 19, 2022) (expending approximately 242 hours in SDNY wage-and-hour action).

Moreover, the time sheets provided by Plaintiff's counsel reflect overbilling by attorneys at the firm. For instance, John Troy, the firm's named partner, billed time for filing the complaint, filing a consent form for the plaintiff to become a party, and filing a request for issuance of a summons. See ECF No. 162-1 at 1-2. All of those clerical tasks could have been performed by a junior attorney or a paralegal. Additionally, many of the time entries "are too vague to allow for meaningful judicial scrutiny." Ge Chun Wen v. Hair Party 24 Hours Inc., No. 15-CV-10186 (ER)(DF), 2021 WL 3375615, at *23 (S.D.N.Y. May 17, 2021). For instance, the time sheets include entries with no detail other than "Research: Lexis Nexis/Legal/Others"; "Stipulation for MCCCC"; and "plf / Prepare DEPO questions & exhibits." See ECF No. 162-1 at 1-2, 3. The Court will therefore apply a 10% reduction in the hours billed.

Plaintiff is thus entitled to an award of attorneys' fees in the amount of $55,022.48, as detailed in the chart below.

| Individual | Hours Requested | Hours Awarded (reflecting a 10% reduction) | Requested Hourly Rate | Reasonable Hourly Rate | Total Fee Award |
|---|---|---|---|---|---|
| John Troy | 122.79 | 110.5 | $650 | $300 | $33,150 |

| Aaron Schweitzer | 45.51 | 40.9 | $400 | $150 | $6,135 |
|---|---|---|---|---|---|
| George Byun | 88.58 | 79.7 | $350 | $160 | $12,752 |
| George Byun[18] | 1.9 | 1.71 | $150 | $100 | $171 |
| Shuyang Xie | 7.49 | 6.74 | $250 | $110 | $741.40 |
| Leanghour Lim | 5.9 | 5.31 | $250 | $125 | $663.75 |
| Ellen Chen | 12.5 | 11.25 | $150 | $100 | $1,125 |
| Tiffany Troy | 1.5 | 1.35 | $150 | $150 | $202.50 |
| Preethi Kilaru | 4.35 | 1.169 | $200 | $70 | $81.83 |
| TOTAL | 290.52 | 258.6 | - | - | $55,022.48 |

### 2. Costs

An employee who prevails in a wage-and-hour action is entitled to recover costs under both the FLSA and the NYLL. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). "As with attorneys' fees, [a] requesting party must substantiate the request for costs." Guo v. Tommy's Sushi, Inc., No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); see also Euceda v. Preesha Operating Corp., No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017), adopted by, 2017 WL 3084408 (E.D.N.Y. July 18, 2017). "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which

---

[18] Troy's declaration includes 1.9 hours of work performed by Byun at a rate of $150 per hour—the same rate requested by Troy for paralegal Ellen Chen. For those 1.9 hours, the Court awards Byun a rate of $100—the same rate awarded to Chen, who also performed the work of a paralegal.

are normally charged [to] fee-paying clients.'" Fisher, 948 F.3d at 600 (quoting Reichman

Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)).

Plaintiffs seek costs in the amount of $3,479.05. For the case filing fee, Plaintiff seeks

$400. See ECF No. 162-1 at 13. The Court takes judicial notice of the $400 filing fee. See, e.g.,

Soto v. Los Corbaticas Deli Grocery II Corp., No. 18-CV-3602 (JGK) (JLC), 2018 WL 4844018,

at *9 (S.D.N.Y. Oct. 5, 2018), adopted by, 2018 WL 6173713 (S.D.N.Y. Nov. 23, 2018) (taking

judicial notice of $400 filing fee).

Plaintiff also seeks $300 for costs associated with service of the summons and complaint

($125 for each of the four named defendants). See ECF No. 162-1 at 13. However, counsel has

not submitted underlying documentation to substantiate the amount of the process server fee or

the fee for the binder. Plaintiff also seeks reimbursement for costs totaling $18.00, described as

"deposition transcript shipping & handling" and "postage payment." Id. And, Plaintiff seeks

reimbursement of $1,139.60 for "Deposition Transcript Ping Lin, Yli Weng, Xin Sheng Gu." Id.

Here, too, Plaintiff has not provided any documentation to substantiate these costs. Plaintiff is

thus not entitled to an award for any of these unsubstantiated costs. See, e.g., Soto, 2018 WL

4844018, at *9 (declining award of process server fee in the amount of $195 where counsel did

not provide documentation to support the amount requested); Acharya v. Solanki, 18-CV-8010

(MKV) (JLC), 2022 WL 1144696, at *9 (S.D.N.Y. Apr. 12, 2022) (declining cost award for

$120 process server fees where fee amount was not substantiated).

In sum, Plaintiff is entitled to an award of costs in the amount of $400.

**CONCLUSION**

For the reasons set forth above, Plaintiff is entitled to default judgment against Defendants and to an award of damages in the amount of $170,506.50. Plaintiff is also entitled to an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. Additionally, Plaintiff is entitled to an award of attorneys' fees in the amount of $55,022.48 and costs in the amount of $400. Finally, the Clerk of the Court is respectfully directed to calculate pre-judgment interest at the statutory rate of 9% a year on the amount of $82,753.25, from March 6, 2014, to the date judgment is entered. Plaintiff is directed to serve a copy of this Order on Defendants and file proof of service of the same on the docket by no later than March 24, 2023.

DATED:        March 8, 2023
              New York, New York

Respectfully submitted,

VALERIE FIGUEREDO
United States Magistrate Judge

Copies to:

All counsel (via ECF)